

10-CV-00388-CMP

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| JAMES and SHELLEY HEATH,<br><br>　　　　　　Plaintiffs,<br><br>　v.<br><br>ING FINANCIAL PARTNERS, INC.;<br>RHONDA L. BREARD, BREARD &<br>ASSOCIATES WEALTH MANAGEMENT,<br>LLC; and COLLEEN M. BROWN,<br><br>　　　　　　Defendants. | COMPLAINT<br><br>No.<br><br>**C10-0388 TSZ**<br><br>[JURY TRIAL DEMANDED] |

### I.　NATURE OF THE ACTION

1.　This case concerns a massive fraud masterminded by well-known stockbroker Rhonda Breard that was only able to happen because of the complete lack of oversight by the broker-dealer responsible for her conduct.

2.　Stockbroker Rhonda Breard is a local financial expert, who had built a large client base through many appearances on local television and radio stations. Many of these clients had entrusted their life savings and retirement money to her, based upon her self-promoted image as an investment guru.

ORIGINAL

COMPLAINT
Case No.

-1-



006156-11 357341 V1

3. In reality, and not known by her customers, Breard had a checkered history with securities regulators, having been fined on several occasions for misconduct, suspended on at least one occasion, and fired from another brokerage for misconduct.

4. Beginning in 2002, Breard was hired by international financial giant ING Financial Partners, Inc. as a registered representative. Breard worked for ING through her investment advisors business, which she called Breard & Associates Wealth Management. Later, ING Financial Partners, Inc. also hired Colleen Brown, who also worked as a registered representative at Breard & Associates. As the employer and broker-dealer of record, ING Financial Partners, Inc. had a duty under federal and state law to properly supervise the activities of Breard and Brown. This duty was heightened in light of the numerous regulatory "red flags" in Breard's past.

5. Beginning by at least 2007, Breard and Brown convinced numerous clients to write checks to Breard or Breard & Associates, ostensibly to allow Breard to open a more advantageous account at a different custodian bank. In reality, however, Breard converted the money to her own use, buying waterfront houses, boats, numerous expensive cars and huge amounts of jewelry. To cover this misappropriation of client funds, Breard and Brown operated a scheme whereby fictitious monthly account statements were sent to these customers to keep them from figuring out the scheme. These bogus statements were exceedingly well-crafted and fooled even industry professionals.

6. One entity that should have uncovered the scheme, had they not been asleep at the switch, was ING Financial Partners, which had a duty to monitor all of its brokers' activities, precisely to keep misconduct like this from occurring. Because ING Financial Partners failed to supervise Breard, the scheme continued through February 10, 2010, causing millions of dollars in losses to unsuspecting investors.

COMPLAINT
Case No.
006156-11 357341 V1
-2-
HAGENS BERMAN
1918 EIGHTH AVENUE, SUITE 3300 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

## II. JURISDICTION AND VENUE

7. The claims asserted herein arise under and pursuant Sections 10(b) and 20(a) of the Exchange Act [15 U.S.C. §§ 78j(b) and 78t(a)] and Rule 10b-5 promulgated thereunder by the SEC [17 C.F.R. § 240.10b-5], the Washington State Securities Act and other pendent state law claims.

8. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and Section 27 of the Exchange Act.

9. Venue is proper in this District pursuant to Section 27 of the Exchange Act and 28 U.S.C. § 1391(b). Many of the acts charged herein, including the preparation and dissemination of materially false and misleading information, occurred in substantial part in this District.

10. In connection with the acts alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications and the facilities of the national securities markets.

## III. PARTIES

11. Plaintiffs Jim and Shelley Heath (the "Heaths") are married individuals residing in Renton, Washington. They had several IRA accounts with ING Financial Partners, through brokers Rhonda Breard and Colleen Brown through Breard & Associates Wealth Management. Plaintiffs had invested substantial amounts of money

12. Defendant ING Financial Partners, Inc. ("ING") is a corporation organized under the laws of Minnesota, and with a principal place of business at 909 Locust Street, Des Moines, IA 50309. Defendant ING is registered as a Broker-Dealer in the State of Washington, and has been since April 1983. ING has been a federal covered investment adviser registered with the United States Securities and Exchange Commission since July 11, 1994.



HAGENS BERMAN
1918 EIGHTH AVENUE, SUITE 3300 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

006156-11 357341 V1

13. Defendant Rhonda L. Breard ("Breard") is a registered securities salesperson in the State of Washington. Her Financial Industry Regulatory Authority securities salesperson identification number is CRD# 1231763. From February of 2002 through February 2010, Breard was registered to sell securities through Defendant ING.

14. Defendant Breard & Associates Wealth Management, LLC ("BAWM") is a Washington limited liability company based at 4040 Lake Washington Blvd., Kirkland, WA 98033.

15. Defendant Colleen M. Brown ("Brown") is currently employed by and registered with Defendant ING Financial Partners as a General Securities Representative, and has been since March 19, 2003.

## IV. FACTUAL ALLEGATIONS

Defendant Breard has a long history as a financial professional, extending back to at least 1984. Despite her checkered past with regulatory authorities, she has risen to become one of the more prominent local financial advisors in the Seattle area.

### A. Breard Gains Notoriety As a Financial "Expert"

16. Defendant Rhonda Breard had made a name for herself in the investment community through a series of self-promotional TV ads and radio spots, including her popular "Help Me Rhonda" spots on local Seattle television in which she provided financial advice to local residents. Defendant Breard also gave numerous seminars and otherwise marketed BAWM and Breard's expertise in advising clients with their investments.

17. Defendant Breard was wildly successful in her marketing efforts, amassing a large number of clients within the State of Washington, as well as numerous other states throughout the country. Beginning several years ago, Breard began to abuse these client relationships.

### B. Breard's Looting of Client Accounts

18. Pursuant to federal and state laws, investment advisors may not have "custody" of client funds, but may only direct the investment activities within a "custody" account held at a

COMPLAINT  
Case No.  
006156-11 357341 V1

-4-



HAGENS BERMAN  
1918 EIGHTH AVENUE, SUITE 3300 • SEATTLE, WA 98101  
(206) 623-7292 • FAX (206) 623-0594

1  bank or brokerage. This rule is designed to keep investment advisors from looting client accounts.

19. Beginning by at least 2007, Defendants BAWM, Breard and Brown began to implement a scheme whereby they convinced clients that they need to change their accounts from their current custodian bank to a new bank in order to "rebalance" their accounts, or some similar dishonest reason. Alternatively, these Defendants told certain other clients that they should close their custody accounts and use the proceeds to purchase annuity products. In each case, Defendants Breard, BAWM and Brown convinced the clients to write a check to BAWM or Breard, and that a new account or annuity would be opened for them.

20. In fact, however, the checks written to BAWM or Breard were converted to Breard's own personal use, including the purchase of three multi-million dollar houses, numerous cars, boats, jet-skis and a large stockpile of expensive jewelry.

21. To hide this misappropriation, Defendant Breard altered documents to show her clients that she was depositing their money in brokerage accounts. Plaintiffs received exceedingly well-crafted forgeries of account statements on a monthly basis, showing their purported investments in great detail.

22. In reality, however, Breard, Brown and BAWM knew that these monthly statements were nothing but shams designed to hide the misappropriations from the clients.

C.  **ING's Failure to Supervise Breard and Brown**

23. As the Broker-Dealer employing both Defendant Breard and Defendant Brown, ING had a duty to provide adequate supervision of these two brokers. ING utterly failed to provide any meaningful supervision of Breard or Brown, allowing them to pull off this massive scheme without any threat of detection. This complete failure to supervise was even more negligent in the face of the multiple instances of misconduct in Breard's past, which ING either knew or should have known prior to hiring her.


HAGENS BERMAN
1918 EIGHTH AVENUE, SUITE 3300 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

006156-11 357341 V1

### 1. Breard's History of Misconduct

24. According to a report compiled through the Financial Industry Regulatory Authority (FINRA), an independent regulator for U.S. securities firms, Breard was forced to resign from Smith-Barney in 1991 after an allegation of unauthorized trading. Two other enforcement actions resulted in fines of about $16,000 in one instance and more than $80,000 in another. In 1993, she was censured, her license suspended for 10 days and she was fined $15,000 for unauthorized trading. These numerous instances of misconduct should have raised "red flags" with Defendant ING Financial Partners that Breard required even more careful monitoring and supervision than a typical broker.

## D. ING Financial Partners History of Failure to Properly Supervise Brokers

25. ING has a history of failing to properly supervise its brokers, having paid large fines and/or state-ordered restitution to clients on several occasions over the past few years, including the following two virtually identical situations:

> **Failure to Supervise Nevin Gillette and Richard Wells, State of Illinois Securities Department, File No. 0600566, September 12, 2008.** In this case, ING reached a Consent Order with the Illinois Securities Department, who had alleged that ING's failure to properly supervise two registered representatives led to those representatives converting client funds to their own personal benefit. ING was ordered to pay a fine to the state of $110,000 and to make restitution to the victims of $4,567,326.22.

> **Failure to Supervise Peter Tzamalas, Massachusetts Securities Division, Docket No. E-2006-0095, October 22, 2007.** ING entered into a Consent Decree with the Secretary of the Commonwealth to pay a fine of $100,000 and to repay more than $1,000,000 that had allegedly been misappropriated from clients by registered representative Peter Tzamalas. According to allegations made by the Secretary of the Commonwealth, Tzamalas commingled a bank account with personal and client funds. The Commonwealth further alleged that Tzamalas received clients' funds which were purportedly invested, but were rather used to pay gambling debts of Tzamalas at casinos in Connecticut and Atlantic City.



HAGENS BERMAN
1918 EIGHTH AVENUE, SUITE 3300 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

COMPLAINT
Case No.

006156-11 357341 V1

### E. ING Financial Partners Finally Takes Action

26. On February 10, 2010, ING Financial Partners finally suspended the employment of Defendant Breard for "violation of firm policy regarding the handling of customer funds." As of March 7, 2010, ING had taken no such action against Defendant Brown. This tardy termination was far too little, far too late, as Plaintiffs had already lost hundreds of thousands of dollars through this scheme.

### Count I

### Violation of Section 10(b) of the Exchange Act (15 U.S.C. § 78j) and Rule 10b-5 Promulgated Thereunder Against All Defendants

27. Plaintiffs repeat and reallege each and every allegation contained above as if fully set forth herein.

28. Defendants: (a) employed devices, schemes, and artifices to defraud; (b) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (c) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon clients of Defendant BAWM and Defendant Breard.

29. As a direct and proximate result of Defendants' wrongful conduct, Plaintiffs suffered damages in connection with the theft of their assets.

### Count II

### Violation of Section 20(a) of the Exchange Act Against Defendants Breard and ING

30. Plaintiffs repeat and reallege each and every allegation contained above as if fully set forth herein.

31. Defendants Breard and ING acted as controlling persons of Defendant BAWM within the meaning of Section 20(a) of the Exchange Act as alleged herein. By reason of her position as officer and/or director of BAWM, and her ownership of BAWM, Defendant Breard

COMPLAINT
Case No.

-7-

006156-11 357341 V1


1918 Eighth Avenue, Suite 3300 • Seattle, WA 98101
(206) 623-7292 • FAX (206) 623-0594

had the power and authority to cause BAWM to engage in the wrongful conduct complained of herein. Likewise, by reason of its status as the employer of Breard, as well as the licensed broker-dealer in charge of BAWM and Breard, ING had the power and authority to cause BAWM to engage in the wrongful conduct complained of herein.

32. By reason of such conduct, Defendants Breard and ING are liable pursuant to Section 20(a) of the Exchange Act.

### Count III

### Negligence
### Against Defendant ING

33. Plaintiffs repeat and reallege each and every allegation contained above as if fully set forth herein.

34. ING owed a duty to Plaintiff to provide adequate supervision of Defendants Breard, Brown and BAWM to determine whether they were acting in the interests of Plaintiffs.

35. ING breached this duty by failing to adequately supervise Defendants Breard, Brown and BAWM.

36. As a direct and proximate result of ING's negligence in supervising Defendants Breard, Brown and BAWM, Plaintiffs suffered damages.

### Count IV

### For Violation of the Washington State Securities Act
### Against All Defendants

37. Plaintiffs repeat and reallege each and every allegation contained above as if fully set forth herein.

38. As described above, Defendants Breard, BAWM and Brown employed a device, artifice and/or scheme to defraud Plaintiffs and/or made untrue statements of material fact and/or engaged in acts, practices, or courses of business which operated as a fraud or deceit upon Plaintiffs.

COMPLAINT
Case No.

-8-

006156-11 357341 V1



HAGENS BERMAN
1918 EIGHTH AVENUE, SUITE 3300 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

39. Defendant ING failed to adequately supervise the activities of Defendants Breard, BAWM and Brown as it was required to do by the WSSA, including RCW § 21.20.110.

40. Further, Defendant ING directly or indirectly controlled Defendants Breard, BAWM and Brown by virtue of its role as employer and/or the broker of record on all securities transactions undertaken by these Defendants.

41. By virtue of this misconduct, Defendants ING, Breard, BAWM and Brown each violated the Washington State Securities Act, and are liable to Plaintiffs pursuant to RCW § 21.20.430.

## Count V

### Fraud
### Against Defendants Breard, BAWM and Brown

42. Plaintiffs repeat and reallege each and every allegation contained above as if fully set forth herein.

43. In order to induce Plaintiffs to write checks to Breard personally, who then absconded with assets belonging to Plaintiffs, Defendants Breard, BAWM and Brown each made false representations of material existing facts, namely that Plaintiffs should write a check to Breard or BAWM, which would then be used to open a new account for Plaintiffs.

44. Defendants Breard, BAWM and Brown were each aware of the falsity of the representations at the time they were made, as they planned to not open such an account, but rather to convert the money to their own uses.

45. Plaintiffs had no knowledge of the falsity of these misrepresentations, and justifiably relied upon these misrepresentations made by Defendants Breard, BAWM and Brown when writing a check to Breard or BAWM.

46. As a direct and proximate result of this wrongful possession of assets belonging to them, Plaintiffs suffered significant injury cased by Defendants Breard, BAWM and Brown.

COMPLAINT
Case No.

-9-


HAGENS BERMAN
1918 EIGHTH AVENUE, SUITE 3300 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

006156-11 357341 V1

## Count VI

### Conversion
### Against Defendants Breard and BAWM

47. Plaintiffs repeat and reallege each and every allegation contained above as if fully set forth herein.

48. Defendants Breard and BAWM unlawfully took and/or retained assets belonging to Plaintiffs, thereby depriving Plaintiffs of the rightful possession of these assets.

49. The possession of the assets by Breard and BAWM was wrongful.

50. As a direct and proximate result of this wrongful possession of assets belonging to Plaintiffs, they suffered damages.

## Count VII

### Breach of Fiduciary Duty
### Against All Defendants

51. Plaintiffs repeat and reallege each and every allegation contained above as if fully set forth herein.

52. Defendants Breard, BAWM, Brown and ING each had a fiduciary duty to Plaintiffs.

53. Defendants Breard, BAWM and Brown each violated this fiduciary duty by converting assets rightfully belonging to Plaintiffs to the personal benefit of Breard and BAWM.

54. Defendant ING breached this fiduciary duty by failing to properly supervise the activities of Defendants Breard, BAWM and Brown, as it was required to do.

55. As a direct and proximate result of misconduct, Plaintiffs suffered damages.

**WHEREFORE**, Plaintiffs pray for relief and judgment, as follows:

a) Awarding compensatory damages in favor of Plaintiffs against all Defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;



b)   Awarding Plaintiffs their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

c)   Such other and further relief as the Court may deem just and proper.

## V.   JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

DATED this 9th day of March, 2010.

By _____
Steve W. Berman, WSBA #12536
Karl P Barth, WSBA #22780
**HAGENS BERMAN SOBOL SHAPIRO LLP**
1918 Eighth Avenue, Suite 3300
Seattle, Washington 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594

*Attorneys for Plaintiffs*

COMPLAINT
Case No.
-11-
006156-11 357341 V1
HAGENS BERMAN
1918 EIGHTH AVENUE, SUITE 3300 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594